UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALAN RICHARD GANN,            )
                              )
        Plaintiff             )
                              )
v.                            )   Civil Case No. 20-3198 (RJL)
                              )
CARLOS DEL TORO,[1]           )
Secretary of the Navy,        )
                              )
        Defendant.            )

**MEMORANDUM OPINION**
December 21, 2021 [Dkt. ## 9, 11]

Plaintiff, Alan Richard Gann ("Gann" or "plaintiff"), is challenging a decision by the Board for Correction of Naval Records ("the Board" or "BCNR") upholding his separation from the United States Navy. Both Gann and the Secretary of the Navy ("the Government") have moved for summary judgment. For the following reasons, both motions will be GRANTED IN PART and DENIED IN PART, and the case will be REMANDED to the Board for further proceedings.

**BACKGROUND**

**A.    Gann's Military Service and Commissioning**

Gann enlisted in the United States Navy in 1994. Administrative Record ("AR") [Dkt. # 16] at 1, 488, 500–05. He served on active duty until August 1, 2000, at which time he transitioned to the Navy Reserve. *See* AR1. There, he reached the rank of Chief

---

[1] Carlos Del Toro was sworn in as Secretary of the Navy on August 9, 2021 and is thus automatically substituted for Acting Secretary Thomas Harker. *See* Fed. R. Civ. P. 25(d).

Petty Officer (E-7). *See id.* Gann served satisfactorily during this time, with one important exception. He received a negative performance evaluation for the 2010–2011 reporting period for attempting to defraud the State of Virginia[2] (*see* "2011 Misconduct Report"). *See* AR1, 101. Notwithstanding this transgression, Gann applied in 2011 to the Direct Commission Officer ("DCO") Program, an initiative through which enlisted servicemembers can become officers. *See* AR1–2.

Initially, Gann worked with a recruiter to apply for the September 2011 DCO Professional Review Board ("DCO Board"). However, for reasons that are not clear in the record, the September 2011 DCO Board did not even consider Gann's application.[3] *See* AR2, 105–06. Gann subsequently applied for consideration before the March 2012 DCO Board and the September 2012 DCO Board. AR412. Gann was not selected either time. *Id.* While the Navy did not provide a reason for these denials, it does note that Gann's applications to the March 2012 and September 2012 DCO Boards improperly omitted the 2011 Misconduct Report relating to his fraudulent misconduct.[4] *See id.*

---

[2] Specifically, Gann solicited a technician to modify his official Leave and Earnings Statement. AR101.

[3] The DCO Board meets twice annually—once in March and once in September. *See* AR412.

[4] DCO Program applications must include, *inter alia*, the "last three years of fitreps/evals [fitness reports/evaluations]." AR337. There is a dispute about why Gann's applications were missing the 2011 Misconduct Report. Gann claims that he provided the 2011 Misconduct Report to the recruiter tasked with submitting his initial September 2011 DCO Board application and that he assumed his new recruiter submitted this report in subsequent applications. *See* Plaintiff's Combined Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Pl. MSJ") [Dkt. # 11] at 2; *accord* AR19–22. The Government claims that Gann intentionally withheld the 2011 Misconduct Report. AR416–17; *accord* Defendant's Motion for Summary Judgment ("Def. MSJ")

2

Gann next applied to the September 2013 DCO Board. AR264, 412, 416. Once again, his application did not contain the 2011 Misconduct Report. *See id.* However, the DCO Board did not realize the omission and selected Gann for the DCO Program on September 19, 2013. *See id.*; *see also* AR455–63. Gann received his formal selection letter on March 27, 2014 after several months of medical tests. AR416, 453–54.

After Gann received his commissioning papers, however, his situation took a turn for the worse.[5] On April 29, 2014, a civilian employee noticed that Gann had omitted the 2011 Misconduct Report and informed the DCO Board. AR 264; 412. On April 29 and 30, several Navy officials called Gann to advise him that there was a problem and that he should not go forward with the commission. AR78, 268. Indeed, on May 2, Gann received a memo from "Commander, Navy Recruiting Command" informing him that "the professional recommendation for the Direct Commission Officer program [wa]s withdrawn" due to his "failure to submit appropriate documentation for review[.]" AR427, 417, 424. During this time, Gann consulted legal counsel and claims that his lawyers advised him that he was "still authorized to accept the commission" because the Navy had

---

[Dkt. # 9] at 23. Ultimately, however, resolution of this question is unnecessary because the Board's decision neither raises, nor resolves, this factual dispute. *See* AR1–5.

[5] The Government suggests in its briefing that Gann did not legitimately obtain his commissioning documents. *See* Def. MSJ at 7 ("Plaintiff managed to obtaining [sic] the commissioning paperwork without his recruiter's knowledge." (citing AR264)), 10 (referring to "surreptitious acquisition of the commissioning paperwork"); *accord* Defendant's Reply In Support of His Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def. Reply") [Dkt. # 14] at 5 n.3. Gann contends his recruiter sent him the documents. *See* Pl. MSJ at 3; *accord* AR23, 190–91. Ultimately, this dispute is immaterial because the Board's decision neither raises, nor resolves, this factual dispute. *See* AR1–5.

not "legally rescind[ed] th[e] offer of the commission[.]" AR27–29; *accord* AR5, AR223.[6] On May 29, however, Captain Bruce Smith—Gann's commanding officer—informed him that Navy Recruiting Command "ha[d] withdrawn the request for [Gann's] commission." AR224. Captain Smith added that this decision was "final" and that Gann "need[ed] to move on." *Id.*

Nevertheless, on June 2, Lieutenant Tristan Setzer—a Navy Officer and personal friend of Gann's—commissioned Gann. AR410; *see also* AR2, AR472. Setzer submitted a statement attesting that Gann appraised him of the complications but that he felt Gann had a strong legal argument that he was still entitled to a commission.[7] AR472. Following the submission of this commissioning paperwork, Gann was "formally listed in [Navy] personnel systems as an Ensign (O-1)." AR268.

**B.    Separation Proceedings**

Gann's execution of his commission triggered an investigation by the Navy. On September 6, 2014, Captain Smith informed Gann that he had prepared a "Preliminary Inquiry" documenting both (1) the omission of the 2011 Misconduct Report in Gann's DCO Board application, and (2) the fact that Gann was commissioned after being notified by his commanding officer that "his commission was being withdrawn[.]" AR266–69. Around this same time—on September 5, 2014—Captain Smith provided a "Report of

---

[6] The Government now disputes whether Gann received such legal advice. *See* Def. MSJ at 22–24. However, the Board made no mention of this factual dispute. *See* AR1–5.

[7] While the Government now takes the position that Setzer's statements were not credible, Def. MSJ at 9, 24–25, the Board made no such finding. *See* AR1–5.

4

Misconduct" to "Commander, Navy Personnel Command" recommending that Gann "be separated from naval service[.]" AR 264–65.

On December 16, 2014, Gann's command submitted an "Action Memo" to the Commander, Navy Personnel Command. AR255–56. The Action Memo recommended "requiring . . . Gann to separate from the naval service with an under Honorable conditions (General) discharge" and—in the event Gann "request[ed] to retire"—"intiat[ing] retirement grade determination proceedings and authoriz[ing] him to request a reserve retirement at age 60 in a former member status in pay grade E-6." AR256.

On January 13, 2015, the Navy informed Gann that it was initiating separation procedures and listed two bases for separation: (1) fraudulent appointment, and (2) "[i]nability to maintain adequate levels of performance as evidenced by [Gann's] failure to conform to prescribed standards of military deportment." AR260. On February 9, 2015, Gann filed a response, challenging the factual and legal grounds for the Navy's separation basis. *See* AR72–83. Gann also requested voluntary retirement, effective June 2015, at his "current grade of O-1E" or, alternatively, "at [his] previous grade of E-7[.]" AR259.

On June 3, 2015, the Commander of Navy Personnel Command sent a letter to the Assistant Secretary of the Navy (Manpower and Reserve Affairs). *See* AR 484–85. The letter recommended separating Gann "with an under Honorable conditions (General) discharge, separation code JDA (fraudulent entry)[.]" AR485. The letter recommended basing Gann's reserve retirement "on a final pay grade of E-6" because of Gann's "misconduct resulting in his fraudulent commission while serving" as an E-7. AR485;

*accord* SECNAVINST 1920.6C, encl. 4 ¶ 12(a) (basing retirement paygrade on "the highest grade in which [an officer] served satisfactorily[.]").

On July 7, 2015, the Assistant Secretary of the Navy (Manpower and Reserve Affairs) approved the recommendation from the letter. *Id.* The Navy sent Gann a Separation Order on July 17, 2015 informing him that he was being discharged "with a General Discharge (under honorable conditions)" and that he was "authorized to receive retirement pay as a former member in the reduced paygrade of E-6, when eligible." AR483.

### C.   Procedural History

On July 17, 2018, Gann submitted an Application for the Correction of Military Records to the Board for Correction of Naval Records ("the BCNR" or "the Board"). AR7–11. The BCNR "may correct any military record . . . when the [Board] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); *accord* 32 C.F.R. § 723.2. Gann made four arguments challenging the Navy's separation.[8]

*First*, Gann argued that the Navy was wrong to reduce his retirement paygrade to that of an E-6. *See* AR46–49. In particular, Gann noted that under the Uniform Code of Military Justice ("UCMJ"), the offense of fraudulent appointment is not complete until the accused receives pay in their fraudulently procured rank. *See* 10 U.S.C. § 904a; *accord* AR47–48. Thus, Gann reasoned, any fraudulent appointment occurred as an O-1—when he first received pay as an officer—meaning the last rank in which he satisfactorily served was an E-7, *not* an E-6. *Id.* The Board disagreed, finding that Gann "committed the

---

[8] Gann made additional arguments that he did not pursue before this Court.

misconduct of fraudulent commissioning while in the grade of E-7 when [he] elected to obtain the assistance of a Lieutenant Junior Grade to execute [his] appointment after being told by [his] chain of command via email that the commission had been rescinded." AR4.

*Second*, Gann argued that he was "innocent" of fraudulent appointment because, on the advice of counsel, he believed he was legitimately entitled to commission. AR52–54, 27–29. The Board acknowledged that Gann claimed to have "had justifiable legal grounds for accepting [his] appointment," but—without opining on the merits of those grounds—found that Gann nevertheless committed fraudulent commissioning. *See* AR4–5.

*Third*, Gann argued that the Navy had not legally rescinded his commission. AR28. He contended that the Navy instead withdrew its "professional recommendation," which did not affect the validity of his commissioning documents. *See id.* The Board disagreed, finding that Gann received "an email from [his] chain of command" informing him "that the commission was rescinded[.]" AR4.

*Fourth*, Gann argued that the Navy applied the wrong separation procedures. Gann noted that two types of separation procedures could have applied in his case: (1) MILPERSMAN 1910-402, which governs E-7s and would have afforded Gann a pre-separation hearing ("Enlisted Separation Procedures"), and (2) SECNAVINST 1920.6C encl. 7, which governs O-1s and would have allowed the Navy to dismiss Gann without a hearing ("Officer Separation Procedures").[9] *See* AR50–53. The Navy chose to apply the

---

[9] The Enlisted Separation Procedures give enlisted Reservists with more than six years of service the right to an administrative board. *See* MILPERSMAN 1910-402 ¶ 1(b). By contrast, the Officer Separation Procedures allow Reserve Officers who have served less than six years as commissioned officers to be separated on the papers. *See* SECNAVINST

7

less protective Officer Separation Procedures. *See* AR4, 266. Gann argued that it was unfair for the Navy to, on the one hand, find that he had not legitimately commissioned, but, on the other hand, treat him like a commissioned officer in determining the applicable separation procedures. *See* AR52–54. The Board did not squarely respond to Gann's argument but found that the Navy "deemed to honor [Gann's] appointment despite categorizing it as the result of a fraudulent commission," and thus Gann was an O-1 "at the time of [his] processing for separation." AR4.

Gann filed the Complaint in this case on November 5, 2020, challenging the Board's decision. *See* Complaint ("Compl.") [Dkt. # 1]. The parties have fully briefed cross-motions for summary judgment. *See* Defendant's Motion for Summary Judgment ("Def. MSJ") [Dkt. # 9]; Plaintiff's Combined Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Pl. MSJ") [Dkt. # 11]; Defendant's Reply In Support of His Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def. Reply") [Dkt. # 14].

## LEGAL STANDARD

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In these actions, "[t]he entire case on review is a question of law." *Id.* (citations and quotations omitted). Decisions by the BCNR are subjected to "an unusually deferential application of the arbitrary or capricious standard of the Administrative Procedure Act."

---

1920.6C encl. 7, encl. 3 ¶¶ 1(a)(9), (b)(5), encl. 1 ¶ 23.

*Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (citations and quotations omitted). Under this narrow scope of review, the Court should "limit [its] inquiry to whether the [Board]'s decision making process was deficient, not whether [its] decision was correct."[10] *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (citations and quotations omitted). Nevertheless, the Board must adequately explain its decision, and failure to do so is arbitrary and capricious and will result in remand. *See Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404–07 (D.C. Cir. 1995).

## DISCUSSION

Gann challenges as arbitrary and capricious four of the Board's conclusions in upholding his separation from the Navy.[11] *See* Compl. ¶¶ 71–93 (Counts One through Four). I address each contention in turn.

### A. The Board's Conclusion That Gann Committed Misconduct As An E-7 Is <u>Not</u> Arbitrary.

Because the Navy sets retirement paygrades based on "the highest grade in which [a servicemember] served satisfactorily," SECNAVINST 1920.6C, encl. 4 ¶ 12(a), the Board's conclusion that Gann committed misconduct as an E-7—rather than an O-1—resulted in a reduction in Gann's retirement pay. *See* AR5. Gann argues that the Board

---

[10] This highly deferential standard reflects both the broad discretion conferred by the statute and "ensure[s] that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone*, 223 F.3d at 793 (citation omitted); *accord Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989).

[11] Count Five of the Complaint is made in the alternative to Count Four. *See* Compl. ¶ 95; Pl. MSJ at 19. Because Count Four is meritorious, *see infra*, there is no need to address Count Five.

was wrong to find that he "committed the misconduct of fraudulent commissioning while in the grade of E-7," AR4, because that offense was not complete until he received pay as an O-1, *see* 10 U.S.C. § 904a (UCMJ art. 104a); Compl. ¶¶ 71–76; Pl. MSJ at 6–8.

The Board adequately explained its reasoning. Specifically, the Board found that Gann "committed the misconduct of fraudulent commissioning while in the grade of E-7 when [he] elected to obtain the assistance of a Lieutenant Junior Grade to execute [his] appointment after being told by [his] chain of command via email that the commission had been rescinded." AR4. The Board further noted that this behavior "was not in keeping with the expected standards of a member of the U.S. Navy, regardless of rank or grade." AR5. The administrative record also frames the Board's decision with additional context. Namely, the Navy justified an E-6 pay grade by reference to the "inexcusable nature of [Gann's] misconduct *resulting in* his fraudulent commission while serving as a Chief Petty Officer [*i.e.*, an E-7]." AR485 (emphasis added).

Taken together, the Board reasonably concluded that Gann took steps toward committing fraudulent appointment as an E-7—even if the offense was not fully realized until Gann became an O-1. That misconduct was apparently enough for the Board to find that Gann did not "serve[] satisfactorily" as an E-7. SECNAVINST 1920.6C, encl. 4 ¶ 12(a). While "of less than ideal clarity," the Board's "path may reasonably be discerned," which suffices under the APA. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations and quotations omitted); *accord Frizelle v. Slater*, 111 F.3d 172, 176–77 (D.C. Cir. 1997) (deferring to Coast Guard Board

after analyzing how its decision could "reasonably be interpreted" even though it "could have explained its reasons . . . in more detail").

### B. The Board's Failure to Address Gann's Argument Regarding Fraudulent Intent Is Arbitrary.

Gann contends that the Board was erroneous in its determination that he "committed the misconduct of fraudulent commissioning," AR4, because Gann did not knowingly or intentionally mislead anyone. *See* Compl. ¶¶ 77–83 (Count Two); Pl. MSJ at 8–13. As evidence, Gann cites portions of the administrative record indicating that he believed in good faith that he was legally entitled to a commission, as advised by his lawyers. *See id.*; *accord* AR27–29. He also cites evidence showing that he did not conceal anything from the officer who performed his commissioning. *See* Pl. MSJ at 9–12; *accord* AR410, 472. Without such deceit, Gann argues, he could not have made a "*knowingly* false representation or *deliberate* concealment," as required to find fraudulent appointment. *See* 10 U.S.C. § 904a(1) (emphasis added); *accord* Pl. MSJ at 8–9.

The Board failed to address Gann's argument. Namely, it did not dispute Gann's factual contentions, nor did it contest their seemingly obvious materiality to a finding of fraud. Thus, because "the Board's decision did not respond to [Gann's] arguments, which do not appear frivolous on their face and could affect the Board's ultimate disposition, . . . the Board's decision was arbitrary."[12] *Frizelle*, 111 F.3d at 177; *accord Darrell Andrews*

---

[12] Even if Gann had not presented this argument to the Board, *but see* AR53–54 (arguing that "the Navy appears to have never considered the possibility that Mr. Gann was innocent of the accusations against him" even though, *inter alia*, "Mr. Gann accepted his commission based on the advice of his attorneys and the good faith belief that he was entitled to do so[.]"), the Board's failure to consider allegations in the administrative record

11

*Trucking, Inc. v. Fed. Motor Carrier Safety Admin.*, 296 F.3d 1120, 1134–35 (D.C. Cir. 2002); *Magneson v. Mabus*, 85 F. Supp. 3d 221, 228–29 (D.D.C. 2015) (Chutkan, J.) (collecting cases).

To be sure, the Board *acknowledged* Gann's points.[13] But recognizing an argument without addressing it is still error. *See, e.g., Saint-Fleur v. McHugh*, 83 F. Supp. 3d 149, 155 (D.D.C. 2015) (Mehta, J.) ("It is not enough for the board merely to acknowledge that an argument exists, or to identify a plaintiff's non-frivolous arguments without responding to them[.]" (citations and quotations omitted)). Thus, the Board's acknowledgment of Gann's argument was insufficient.

The Government's arguments in its brief here come too late. The Government now contends that Gann's advice of counsel defense "defies logic" and expresses doubt that Gann honestly explained the situation to the officer that commissioned him. Def. MSJ at 19–26; *see also* Def. Reply at 9–11. It also argues that the Board's finding of fraud was

---

that were plainly relevant to Mr. Gann's *mens rea* would violate the APA. *See Delaware Div. of Pub. Advoc. v. FERC*, 3 F.4th 461, 469 (D.C. Cir. 2021) (agency action is arbitrary and capricious where it fails to consider an important aspect of the problem).

[13] *Accord* AR2 ("You contend in your application that you sought legal counsel and were advised that for NPC to rescind the offer of commission, NPC would have to formally take action to do so. Your application states that a lawyer gave you advice that you were still authorized to accept the commission."), AR4 ("The Board noted your statement that you obtained legal advice that the commission had not been properly rescinded."), *id.* ("The Board also considered your commissioning officer's statement, as reflected in the 27 June 2014 Preliminary Inquiry letter, that notes that your commissioning officer, a Lieutenant Junior Grade, had been informed by you that there had been some complications with your commission but a representative of JAG instructed you to proceed before the paperwork was out of date."), AR5 ("The Board also noted that you indicate you believed you had justifiable legal grounds for accepting your appointment to the rank of ensign.").

supported by Gann's surreptitious acquisition of his commissioning paperwork and his deliberate omission of the 2011 Misconduct Report in his DCO Board applications. Def. MSJ at 21–23; *see also* Def. Reply at 8–9. However, the Board neither said, nor implied, that it relied on *any* of these rationales in its decision, "[a]nd it is well-established that [a reviewing court] cannot uphold an agency decision based on a post hoc justification."[14] *Loc. 23, Am. Fed'n of Musicians v. Nat'l Lab. Rels. Bd.*, 12 F.4th 778, 784 (D.C. Cir. 2021) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

### C. The Board's Conclusion that Gann's Commissioning Paperwork was Rescinded Is <u>Not</u> Arbitrary.

Gann argues that the Board erred in finding that his commissioning paperwork had been "rescinded." *See* Compl. ¶¶ 84–90 (Count Three); Pl. MSJ at 13–15; *accord* AR4–5. The Board's conclusion, however, was amply supported by the record. The Board noted that Gann "received an email from [his] chain of command indicating that the commission was rescinded prior to [the] execution of [his] commission." AR4. In that email, Captain Smith told Gann that Commander, Navy Recruiting Command "ha[d] withdrawn the

---

[14] The Government also alleges that even if Gann did not commit fraudulent appointment, he "was also notified of separation for substandard performance of duty by failing to conf[o]rm to prescribed standard of military comportment," which is a standalone "basis for separation." Def. MSJ at 29 (citing AR260); Def. Reply at 8. But this basis for separation is closely related to the fraudulent appointment. Indeed, the Board found that the "execution of [Gann's] appointment after being told by [his] chain of command that it had been rescinded" *was the conduct* that was "not in keeping with the expected standards of a member of the U.S. Navy[.]" AR5. Thus, Gann's purported lack of deceit may have also been probative to this separate finding of misconduct. Moreover, it is not apparent from the Board's decision that a finding of misconduct—but *not* fraudulent appointment— would have been sufficient for it to conclude that there was no need "to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Accordingly, the Board's failure to address Gann's argument could have affected its ultimate disposition in this case.

request for [Gann's] commission." AR224. Captain Smith also told Gann that the decision was "final" and that Gann would "need to move on." *Id.* Accordingly, the Board's conclusion that Gann's commission was rescinded was not arbitrary.

To be sure, Gann disagrees with this interpretation. He contends that he "was told that the *request* for his commission had been withdrawn," not "that his commission itself had been rescinded." Pl. MSJ at 11, 14 (emphasis in original). While Captain Smith's email does reference the "request for [Gann's] commission," AR224, the context of that email cuts against Gann's distinction. Captain Smith was conveying information from the ultimate decisionmaker—Commander, Navy Recruiting Command—and explained that the decision was "final." *See id.* Under these circumstances, it was reasonable to interpret this statement as conveying that the commissioning paperwork had in fact been rescinded, even if Captain Smith spoke imprecisely. Thus, because the Board "reached a reasonable conclusion in the face of imperfect information," it did not act arbitrarily. *See United States Sugar Corp. v. EPA*, 830 F.3d 579, 642 (D.C. Cir. 2016).

### D. The Board's Conclusion That the Navy's Separation Procedures Were Applied Appropriately Is Arbitrary.

Gann challenges the Board's conclusion that the Navy's "administrative discharge . . . was executed in accordance with regulatory guidance and was not erroneous or unjust." AR4. Specifically, Gann argues that it was arbitrary and capricious for the Board to uphold the Navy's decision to (1) apply the Officer Separation Procedures, implying that Gann was a commissioned officer, but (2) take the contradictory position that Gann did not

legitimately commission as an officer. *See* Compl. ¶¶ 91–93 (Count Four); Pl. MSJ at 15–17.

The Board's decision was arbitrary and capricious on this point. It simply opined that the Navy "deemed to honor [Gann's] appointment despite categorizing it as the result of a fraudulent commission," and it was therefore "not erroneous or unjust" to apply the Officer Separation Procedures. AR4–5. But that response did not address Gann's contention that the underlying choice to treat him as an O-1 was inconsistent and unfair. *See* AR52–53; *accord* 10 U.S.C. § 1552(a)(1). Indeed, simply observing that the Navy chose "to honor [Gann's] appointment" does not render that very choice "not erroneous or unjust." In APA terms, the Board "listed the facts and stated its conclusion[]" without "connect[ing] them in any rational way[.]" *Dickson*, 68 F.3d at 1407. The Board's decision is thus arbitrary and capricious.[15]

### E.    Remand Is The Appropriate Remedy.

Where, as here, the BCNR fails to adequately explain its decision and respond to non-frivolous arguments, the remedy is to remand to the Board. *See Dickson*, 68 F.3d at 1407; *Frizelle*, 111 F.3d at 179; *Magneson*, 85 F. Supp. at 228 (TSC) (collecting cases).

---

[15] The Government's arguments to the contrary simply come too late. For example, the Government argues that it must be permissible to adjudicate fraudulent commissioning under the Officer Separation Procedures because they expressly provide for the separation of an officer for fraudulent appointment. *See* Def. MSJ at 28 (citing SECNAVINST 1920.6C, encl. 3 ¶ 1(b)(5)). It also contends that Gann cannot complain of unfairness when he ultimately made the choice to commission and thus avail himself of the procedures available to commissioned officers. *See* Def. Reply at 17. Regardless of the merits of these contentions, the Board did not offer them as bases for its decision, and, as noted above, an agency may not justify its decision with a post-hoc rationale.

On remand, the Board need not change its conclusion, "but if it continues to follow that course, it will have to articulate its reasons for doing so." *Roberts v. Harvey*, 441 F. Supp. 2d 111, 122 (D.D.C. 2006) (Huvelle, J.) (citations omitted).

## CONCLUSION

In light of the foregoing, the Government's Motion for Summary Judgment is **GRANTED** as to Counts One, Three, and Five and **DENIED** as to Counts Two and Four. Gann's Cross-Motion for Summary Judgment is **GRANTED** as to Counts Two and Four and **DENIED** as to Counts One, Three, and Five. This case is **REMANDED** to the Board for proceedings consistent with this Opinion. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge